GABRIEL G. QUINTANA,

       Petitioner,

v.                                                          Civ. No. 18-469 KG/GJF

JAMES MULHERON, Warden, and
HECTOR H. BALDERAS, Attorney
General for the State of New Mexico

       Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court[1] on Petitioner Gabriel Quintana's pro se "Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" ("Petition") [ECF No. 1], Respondents' Answer [ECF No. 16], and Petitioner's Response [ECF No. 18].[2] Having reviewed the briefing and being fully advised, this Court recommends the Petition be **DENIED** for the reasons that follow.[3]

## I.    PROCEDURAL HISTORY

A New Mexico state court jury convicted Petitioner of first degree murder, attempt to commit a violent felony, second degree murder, aggravated battery against a household member, tampering with evidence, and violation of a protective order. On direct appeal, the New Mexico

---

[1] U.S. District Judge Kenneth Gonzales referred this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend an ultimate disposition of the case. *See* ECF No. 4. This Court has concluded that no evidentiary hearing is required or permitted. *See* 28 U.S.C. § 2254(e)(2).

[2] In accordance with the general rules governing Section 2254 cases, Judge Gonzales allowed Petitioner to file a response to the State's answer. *See* ECF No. 11.

[3] In January 2019, approximately eight months after his original Petition, Petitioner also filed an uncaptioned letter, "asking this court to grant [him] clemency due to the facts that have been presented in [his] federal Habeas appeal." ECF No. 21. In this motion, Petitioner reasserts his innocence, cites to the same assertions that he has already made in his Petition (e.g., his complaints of inadequate attorneys and evidence), asks again for a plea deal or a new trial, and attaches documentation showing his good behavior in prison. *Id.* After thoroughly reviewing the motion, it is clear that it contains no additional relevant information or claims for relief. Therefore, the Court recommends that Petitioner's motion [ECF No. 21] be **DENIED**.

Supreme Court ("NMSC") affirmed,[4] except for the aggravated battery conviction.  The NMSC determined that that conviction constituted a predicate felony to the felony murder conviction in violation of the constitutional protections against double jeopardy.  On remand, the state district court re-sentenced Petitioner to a term of life imprisonment plus six years, with an award of 781 days of pre-sentence confinement credit.

On November 19, 2009, Petitioner filed a pro se writ of habeas corpus in state court. Petitioner's appointed counsel subsequently filed an amended petition that included an affidavit from Cynthia Hill, in which she asserted that she and her co-counsel had provided ineffective assistance as Petitioner's trial counsel.  The state habeas court ordered the State to file a response. The State failed to comply with the order for reasons not relevant to the instant Petition. Consequently, the state district court granted the writ of habeas corpus, vacated Petitioner's convictions, and ordered a new trial.  Soon after, the State filed a motion to reconsider.  At the hearing on the motion, the State introduced a competing affidavit by Damian Horne, Petitioner's other trial counsel, that contradicted the assertions made by Ms. Hill.  The district court nonetheless denied the motion to reconsider.  The State appealed.

The NMSC reversed the grant of habeas relief and remanded back to the district court with directions to permit the State to file a response and also to hold "an evidentiary hearing on the merits of Quintana's petition because of the factual issues created by the competing affidavits of Quintana's trial counsel." *Quintana v. Bravo*, 2013-NMSC-011, ¶ 33, 299 P.3d 414.[5]  The State's

---

[4] Pursuant to N.M.R.A. 12-102(A)(1), the NMSC hears appeals directly from the district court involving the imposition of a sentence of life imprisonment.

[5] Specifically, the NMSC stated "[w]ith plenty of blame to go around, we acknowledge that this habeas corpus proceeding was not a model of diligence, cooperation, or fair play. Nor was it, however, a case that even remotely warranted a district judge vacating a jury verdict without considering a response from the State and/or conducting an evidentiary hearing." *Id.* ¶ 16.  "Immediately deciding the merits of Quintana's petition, without a response, and with the accepted fact that a conflict of interest existed, along with some effort by the District Attorney to find substitute

response—supported by Mr. Horne's affidavit—denied the allegations in Petitioner's ineffective

assistance claim. Petitioner then amended his habeas petition and the State again responded. Upon

completion of the briefing, the parties deferred to the state habeas court to determine which claims

would receive an evidentiary hearing.

> The court held an evidentiary hearing to consider these claims:
>
> From the Pro Se Petition, the following claims survived: Ground Three (regarding victims' family's involvement in drug dealing), Ground Six (that Petitioner wanted to take the stand in his own defense), and Ground Seven (regarding an anonymous letter purportedly identifying the actual perpetrator). From the Amended Petition, the following claims survived- that trial counsel was ineffective for: (1) failure to effectively impeach prosecution witnesses; (2) failure to investigate; (3) failure to retain expert witnesses; and (4) cumulative effect of counsel's errors.

Answer, Ex. TT at 2 (attach. 4, 80).[6]  On February 23, 2018, the district court denied habeas relief.

Petitioner sought review by the NMSC on March 22, 2018, but the court denied review on March

30, 2018.  On May 18, 2018, Petitioner then sought review in this Court by filing the instant

Petition.

## II.    FACTUAL BACKGROUND

Pursuant to the Anti-Terrorism and Effective Death Penalty Act (AEDPA), the Court

presumes the factual findings of the NMSC are correct.  *See* 28 U.S.C. § 2254(e)(1); *Schriro v.*

*Landrigan*, 550 U.S. 465, 473–74 (2007).  The NMSC summarized the facts as follows:

> Gabriel (Defendant) and Marisela Quintana were married in 2003. In June 2005, Marisela left Defendant and moved in with her parents two miles away. In August of that year, Marisela obtained an order of protection barring Defendant from any contact with her or the couple's children. Defendant violated the order by physically

---

counsel, was against logic, reason, and impartiality." *Id*. ¶ 30.  In addition to remanding the case, the NMSC ordered that the petition be reassigned to a different judge to properly conduct the proceedings. *Id*. ¶ 33.

[6] The State's record was filed in four attachments with attachment one including exhibits A-J, attachment two including exhibits K-V, attachment three including exhibits W-GG, and attachment four including exhibits HH-XX. As the pages of these attachments are not individually numbered, the Court has included (for ease of reference) two separate page location numbers in each such citation.  For example, "Ex. TT at 2" refers to (unnumbered) page two of exhibit TT, and the parenthetical "(attach. 4, 80)" clarifies that this reference can be found on the 80th page (as designated by the ECF page stamp) of the overall attachment.

confronting Marisela at her place of work, and, on September 4, by going to her parents' home in an attempt to remove the children.

On the morning of September 5, 2005, Marisela left for work in her two-door Chevrolet Cavalier, accompanied by her mother Elisa Apodaca. As they approached the main highway, Defendant emerged from the bushes and stood in front of the car wearing black pants and a black jacket. He was angry and said he wanted to get back together with Marisela. Elisa told Defendant that Marisela did not want to be involved with him any longer. Marisela asked Defendant to move, but he persisted, ultimately opening the car door, entering the rear of the car, and attacking Marisela. He stabbed her in the leg, arms, back, breast and face. The wounds were not life threatening.

When Defendant finally relented, Marisela locked the doors and started to drive to the highway to look for help. However, she noticed that Elisa was no longer in the vehicle, and as she drove away, Marisela observed Defendant in the driveway with his hand raised above Elisa. Marisela arrived at the home of her neighbors, who helped contact the police and paramedics.

Elisa died at the scene, sustaining at least nine stab wounds, several of which penetrated deep within vital areas of her body cavity. She also suffered several defensive wounds. She died as a result of blood loss from a combination of the wounds, the most severe of which severed her aorta.

Approximately twelve hours after the attack, police received a tip from Defendant's brother, Carlos Heredia, stating that Defendant was at their parents' house changing clothes. Defendant was apprehended in the vicinity shortly thereafter wearing a blue T-shirt, dark sweat pants, and boots. His clothes were wet from the waist down, and appeared soiled and littered with stickers. There was no blood on Defendant's clothing at the time of his arrest. Whether these were the same clothes he wore at the time of the attack is a matter of some dispute, though the fact is not dispositive.

The police investigation revealed two additional sets of facts relevant to our consideration regarding Defendant's conduct between the time of the attack and his apprehension. First, another of Defendant's brothers, Librado Heredia, told investigators that Defendant had contacted him, admitting that he had stabbed Marisela and Elisa, and requesting money to go to San Diego. State Police Officer Lorenzo Aguirre testified at trial that Librado had reported the same to him when he arrived at the home of Defendants' parents on the morning of September 5.

Second, at about 7:00 a.m. on the day of the attack, a janitorial worker observed an occupied white Ford truck near the restrooms in a no-camping area at Abiquiu Dam. He observed the same truck in the same location the following day, and reported the vehicle to Ranger Phil Martinez. On Wednesday, two days after the attack, Ranger Martinez inspected the vehicle and discovered a receipt and a torn photograph of Defendant's family in a garbage bag in the bed of the truck. Ranger

Martinez then contacted law enforcement, which later verified that the truck was registered to Defendant. They then obtained a warrant and searched the truck, finding nothing of significant evidentiary value.

*State v. Quintana*, No. 30,847, 2009 WL 6608347, at *1-2 (N.M. Oct. 19, 2009).

## III.    CLAIMS PRESENTED

Petitioner advances three grounds for relief:

(1) <u>Ineffective assistance of trial counsel</u>: that an affidavit from trial counsel establishes ineffectiveness.  Pet. 10.[7]

(2) <u>Victim's family were not made available for questioning</u>: that questioning the victim's family members would have exonerated Petitioner.  *Id*. at 11.

(3) <u>Three knives found in victim's vehicle that matched the stab wounds were never taken into custody</u>: that three bloody knives allegedly found in the victim's car would have proven Petitioner's innocence.  *Id*. at 13.

With respect to Grounds One and Two, Petitioner exhausted the available state court remedies. *See* Exs. L (attach. 2, 5-18), N (attach. 2, 21-77), UU (attach. 4, 90-107).  Petitioner failed to exhaust Ground three, but Respondents have expressly waived the exhaustion requirement.  *See* Answer 6; *see also* 28 U.S.C. § 2254(b)(3).[8]  Therefore, the Court will address all three grounds on the merits.

## IV.    APPLICABLE LAW[9]

The "AEDPA requires that [courts] apply a difficult to meet and highly deferential standard in federal habeas proceedings under 28 U.S.C. § 2254; it is one that demands that state-court decisions be given the benefit of the doubt."  *Simpson v. Carpenter*, 912 F.3d 542 (10th Cir. 2018)

---

[7] In the interests of clarity, the Court has used the pagination appearing in CM/ECF rather than Petitioner's, as Petitioner's filings include unnumbered prefatory pages.

[8] "A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."  28 U.S.C. § 2254(b)(3).

[9] In this section, the Court sets forth the Congressionally-mandated legal standard for federal review of state criminal convictions, as that standard has been interpreted by the Supreme Court and Tenth Circuit.  The Court will include in its individual analysis of Petitioner's claims the substantive legal standard that governs each of those claims.

(quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)) (internal quotation marks omitted). "[T]he standard of review applicable to a particular claim depends upon how that claim was resolved by state courts." *Cole v. Trammel*, 735 F.3d 1194, 1199 (10th Cir. 2013). When a petitioner includes in his habeas application a "claim that was adjudicated on the merits in state court proceedings," a federal court shall not grant relief on that claim unless the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Simpson*, 912 F.3d at 562 (quoting 28 U.S.C. § 2254(d)(1)-(2)).

To determine "whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact," a federal habeas court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (internal quotations and citations omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion. In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id*. Review becomes more difficult, however, when a state court fails to accompany its decision with a reasoned opinion. In such an instance, a federal habeas court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id*.

Once a federal habeas court locates the relevant rationale, it then can determine whether

the decision was contrary to or an unreasonable application of Supreme Court law. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [that] precedent." *Williams v, Taylor*, 529 U.S. 362, 405–06 (2000). This does not require the state court to cite applicable Supreme Court precedent or even demonstrate an "*awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradict them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

A state court decision is an "unreasonable application" of Supreme Court law if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08. Courts apply this objective unreasonableness inquiry "in view of the specificity of the governing rule: The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Simpson*, 912 F.3d 542 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). If, however, "a legal rule is specific, the range may be narrow," thus "[a]pplications of the rule may be plainly correct or incorrect." *Yarborough*, 541 U.S. at 664. It is also important to note that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"; "that application must also be unreasonable." *Id.* at 411.

## V.    ANALYSIS

The Court will consider in turn each of Petitioner's three grounds for relief. The Court will first examine both Ground One, Petitioner's criticism of trial counsel, and Ground Two,

Petitioner's argument that Marisela and her family were not properly questioned together, as ineffective assistance of trial counsel claims. The Court will then end its analysis by addressing Ground Three, Petitioner's contention that three knives found at the crime scene were not properly taken into evidence by police investigators.

### A. Grounds One and Two: Ineffective Assistance of Trial Counsel

Petitioner first asserts that trial counsel failed to adequately gather exonerating evidence. Pet. 10. In support of this proposition, he relies almost exclusively on representations made by Ms. Hill in her affidavit and at the evidentiary hearing. *Id*. Specifically, Ms. Hill stated that trial counsel failed to locate "a Mexican national in pointy boots" or a man by the name of "Martin." *Id*.; *see* ECF No. 17, 6/5/2017 CD at 9:38:00-9:41:39; 11:16:38-11:17:35 (state habeas evidentiary hearing). Moreover, her affidavit maintains that trial counsel's failure to employ expert witnesses to contradict the State's case and to cast doubt on the plausibility of Marisela's recounting of the events amounted to a constitutional violation. Pet. 10; Ex. N at 57-59 (attach. 2, 73-75) (Hill affidavit). Lastly, her affidavit asserts that trial counsel failed to investigate a potentially exonerating statement made by the decedent's husband to Fernando Torres—a passer-by within the vicinity of the crime. *Id*.

Next, Petitioner argues that trial counsel's failure to question Marisela's family about their alleged drug use and trafficking prejudiced his chance for an acquittal. Pet. 11. While not specifically calling this a challenge to trial counsel's effectiveness, Petitioner's collateral attack is framed as such. Therefore, Grounds One and Two will be analyzed together under the legal standard that governs ineffective assistance of counsel.

### 1. Legal Standard

The Sixth Amendment to the United States Constitution guarantees Petitioner the right to

the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). For federal habeas petitions brought under 28 U.S.C. § 2254(d), *Strickland* is clearly established federal law. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000) ("It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States."). To succeed under *Strickland*, Petitioner must show both that "counsel's representation fell below an objective standard of reasonableness" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88. Courts "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

To establish the first prong, a petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 690). This requires Petitioner to establish that the "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of a jury verdict, the prejudice that a habeas petitioner must establish is that—but for counsel's unreasonable conduct—there is a reasonable possibility that the jury would have had reasonable doubt as to the conviction. *See Weaver v.*

*Massachusetts*, 137 S. Ct. 1899, 1912 (2017) ("[H]e has not shown prejudice in the ordinary sense, i.e., a reasonable probability that the jury would not have convicted him . . . .")

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, . . . and when the two apply in tandem, review is doubly so." *Howell v. Trammell*, 728 F. 3d 1202, 1223 (10th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105) (internal citations and quotations omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### 2. Performance of Trial Counsel

Not surprisingly, Petitioner relies on Ms. Hill's affidavit[10] in claiming that trial counsel's representation violated the Sixth Amendment. Yet the state habeas court denied Petitioner relief on this claim, finding that he failed to establish either prong of *Strickland*. To arrive at that conclusion, the state court considered Ms. Hill's affidavit and evidentiary hearing testimony, Mr. Horne's affidavit and evidentiary hearing testimony, Petitioner's evidentiary hearing testimony, and the transcript of the underlying trial. This Court grants deference to the state court's factfinding—deference that Petitioner cannot overcome—and concludes that the state court reasonably applied *Strickland* by discounting Ms. Hill's affidavit in the content of the full evidentiary record.

---

[10] Petitioner also relies on the May 31, 2011, Order Granting Writ of Habeas Corpus. *See* Pet. 10; *see also* Ex. Q (attach. 2, 82-87). As discussed *supra*, n.5, the state district judge improperly granted the writ and that order will carry no weight in this Court's analysis.

### a. Prejudice

In considering each of Petitioner's six arguments supporting his ineffective assistance claim, the Court will first examine the prejudice prong. The Court will consider first whether trial counsel's decision not to search out and locate "Martin," pose drug-related questions on cross-examination to Marisela, or utilize additional experts resulted in prejudice under *Strickland*. The Court will then address Petitioner's criticisms of trial counsel's decision not to reconstruct the crime scene or explore the admissibility of an anonymous letter that Petitioner claimed to receive while awaiting trial. The Court will conclude this portion of its analysis by addressing the statements made to bystander Fernando Torres immediately after the attack occurred.

Petitioner's argument that trial counsel were ineffective because they could not locate a man named "Martin" was rejected by the state court because "the failure to locate an elusive witness is not the same as the failure to investigate the case." Ex. TT at 7 (attach. 4, 85). The court concluded that Petitioner did not establish prejudice because he "failed to demonstrate that Martin was willing to testify and would have given favorable evidence." *Id*. This Court agrees. *See Snow v. Sirmons*, 474 F.3d 693, 730 n.42 (10th Cir. 2007) (quoting *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990) ([t]o affirmatively prove prejudice, [Petitioner] . . . must show not only that the testimony of [an] uncalled witness[ ] would have been favorable, but also that [the] witness [ ] would have testified at trial."). The Petition—and the record—contain not a thread of evidence that Martin even existed or that he would have waived his right against self-incrimination and provided exculpatory testimony. Without more, Petitioner cannot establish that trial counsel prejudiced the defense by not locating a man whose very existence was questionable and whose usefulness was utterly unsupported. It follows then, that the state court's application

of *Strickland* on this point was not only reasonable, it was correct.  Thus, this Court recommends that relief on this basis be denied.[11]

Next, the state habeas court disposed of Petitioner's assertion that trial counsel's failure to link Marisela and her family to drug use and trafficking amounted to ineffective assistance.  The state court observed that "[e]ven if . . . Marisela Quintana was questioned concerning the family drug ties, it is not clear what her testimony would have been.  [She] could have denied [it] . . . and the defense had no evidence to impeach her concerning such a statement."  Ex. TT at 7 (attach. 4, 85).  The court further elaborated that "no evidence was produced at the time of trial to support the victims' family's involvement in illegal drugs, nor has any come to light in the habeas proceedings to support such a claim."  *Id.*  The court noted that "[i]n order to determine whether the impeachment would have made a difference, the actual impeachment evidence would need to be examined."  *Id.* at 8.

This Court grants deference to the state court's reasoning on this point.  Not only did the court correctly find that Petitioner failed to describe what Marisela's testimony would have been regarding drug use and trafficking, it explored her likely response—that the accusation was false.  *Id.*  And in the event Marisela did deny the accusation, the court determined that impeachment was not applicable because no evidence was produced at the time of trial—or had come to light in the last eleven years—that connects her or her family to drug use or trafficking.  This exploration into Marisela's possible testimony is undoubtedly a reasonable application of *Strickland*.  Specifically, it shows that, had this line of questioning been pursued at trial, there is no "reasonable probability that . . . the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

---

[11] The Court also observes that the crimes of conviction occurred more than thirteen years ago and Petitioner's trial occurred nearly twelve years ago.  Nonetheless, despite the passage of that much time, Petitioner has offered no additional information about the existence, whereabouts, or possible testimony of the mysterious Martin.

Therefore, this Court recommends relief be denied as it pertains to this argument.

Without breaking stride, the state court also found that Petitioner failed to show prejudice with his assertion that trial counsel were deficient when they failed to procure additional experts to contradict the State's case. Ex. TT at 8 (attach. 4, 85). The court wondered—because Petitioner failed to specify—what other experts trial counsel should have employed in addition to the two already retained. *Id*. In fact, the court noted that "Petitioner [did] not identify specific experts who would [have] be[en] willing to testify or offer what their testimony would be." *Id*.

This Court agrees with the state court that Petitioner has not made a showing that counsel's failure to utilize additional, yet unspecified experts somehow so prejudiced the defense as to undermine confidence in the jury verdict. To be sure, trial counsel did employ two experts who testified at trial, Mr. Welch and Mr. Jaryhoar. *Id*.; MM (attach. 4, 17-20) (Horne Affidavit). Mr. Welch testified to the lack of evidence tying Petitioner to the crime scene while Mr. Jaryhoar's testimony identified the absence of DNA evidence linking Petitioner to the crime. Ex. MM (attach. 4, 17-20). And by failing to show how an additional expert would have changed the result of the trial, Petitioner has again failed to proffer any evidence to support a finding of prejudice. Accordingly, this Court concludes that the state court reasonably applied *Strickland* with respect to this aspect of the ineffective assistance claim and recommends relief on this point be denied.

Turning to trial counsel's alleged failures to reconstruct the crime scene and pursue an anonymous letter, the Court reaches the same result. The state habeas court determined that, "given the problems identified [in trial counsel's affidavits and the evidentiary hearing] with the introduction of the [evidence], coupled with the strength of the State's case at trial," Petitioner simply could not make a showing of prejudice on these issues. *Id*. Again, this Court agrees. Indeed, before trial commenced, trial counsel did reenact the crime scene with an individual twenty

to thirty pounds heavier than Petitioner and confirmed the plausibility—not impossibility—of the events as described by Marisela. Exs. TT at 4 (attach. 4, 82); MM (attach. 4, 17-20). Additionally, trial counsel was able to cast doubt on Marisela's testimony through two witnesses whose testimony described the size and dimensions of a Chevy Cavalier. Ex. TT at 4, 7 (attach. 4, 82, 85). Glaringly absent from Petitioner's submission, however, is any evidence to support a finding that trial counsel's failure to reconstruct the crime scene in the jury's presence prejudiced the defense. Therefore, this Court grants deference to the state court's analysis and recommends relief be denied on this issue.

Petitioner's claim related to an allegedly anonymous letter follows suit. Before trial, Petitioner claimed to have received an anonymous letter that stated, "[y]our wife and in-laws finally paid us the rest of the money they owe us." Ex. N at 55 (attach. 2, 76). The letter added that Petitioner "now can take the blame for everything just like [his] wife planned." *Id.* The letter finished with "Ha! Ha! Sucker! Martin did it." *Id.* The state habeas court found no evidence supporting these allegations. Ex. TT at 4, 8 (attach. 4, 82, 86). Also, when viewing the strength of the State's case in comparison to the introduction of an anonymous letter with no corroborating evidence, the state court concluded that Petitioner simply could not establish prejudice. *Id.* at 9 (attach. 4, 87). Once again, this Court agrees. For one, there is no indication that the letter would have been admissible. Offering into evidence an anonymous letter allegedly mailed to an accused murderer in custody pending trial would face multiple serious evidentiary roadblocks, highlighted by foundation, authenticity, and hearsay. In addition, Petitioner fails to identify specific information from the letter that would have tended to exonerate him, nor does he describe how counsel should have used that information during trial. In sum and substance, Petitioner was not prejudiced by trial counsel's decision to decline to devote resources to the letter. Quite the

opposite, as "the defense would [have lost] credibility with the jury if the letter was explored." *Id.* at 4 (discussing Mr. Horne's evidentiary hearing testimony); *see* CD 11:44:22-11:47:36. Consequently, this Court recommends relief based on this issue be denied.

Finally, the state court did not specifically analyze passerby Fernando Torres's statements that, shortly after the attack, the decedent's husband told him that "they" killed his wife while simultaneously providing a name that did not sound like "Gabriel." Nonetheless, this Court finds that the state court considered and rejected Plaintiff's argument that Mr. Torres made a potentially exonerating statement. During the evidentiary hearing, Ms. Hill conveyed to the court that she believed Mr. Torres possessed no direct knowledge of any drug-related activity that would support a mafia/cartel retaliation theory. CD 10:22:17-10:26:52. Moreover, Mr. Horne's affidavit further illuminated the issue. Mr. Horne explained that the name relayed to Mr. Torres by the decedent's husband did not sound like "Gabriel" because Petitioner was "known by 'George' or 'Jorge' to family and friends." Ex. MM at 3 (attach. 4, 19). Mr. Horne also informed the court that the reason why the decedent's husband exclaimed "they" killed his wife was explored through direct examination of Mr. Torres at trial. *Id.* Mr. Horne testified that "they" is a colloquial term within the Hispanic community commonly used to refer to one or multiple people. *Id.* In fact, its use is so prevalent in that community that Marisela also used the term when she identified Petitioner as the assailant. *Id.* This evidence paints a clear picture; Petitioner failed to establish—and cannot establish—that counsel's alleged failure to further explore Mr. Torres's statement prejudiced the defense sufficient to undermine confidence in the jury verdict. Thus, this Court also recommends that relief on this ground be denied.

In conclusion, Grounds One and Two contain conclusory assertions without any substance. Unfortunately for Petitioner, such conclusory assertions are insufficient to establish ineffective

assistance of counsel. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance claim where allegations are merely conclusory in nature and without supporting factual assertions (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991))). This Court recommends that relief based on Grounds One and Two be denied.

### b. Deficient Performance

A court applying *Strickland* need not address counsel's performance if a petitioner fails to establish prejudice. *See Ward*, 165 F.3d at 1292-93. The state court did so anyway. Relying on *Strickland*'s teachings, the court concluded that not only did Petitioner fail to demonstrate how counsel's performance fell below an objective standard of reasonableness—but also that such performance fell squarely within trial counsel's strategic discretion. Ex. TT at 10 (attach. 4, 88). This Court agrees and gives deference to that conclusion.

Beginning with the competing affidavits of trial counsel, the state court explained that Ms. Hill's assertion that she and Mr. Horne were ineffective "[was] not dispositive of the case." Ex. TT at 6 (attach. 4, 84). Rather, the court observed that "[t]rial counsel's strategic choice made as a result of investigation as to what defense to pursue is 'virtually unchallengeable'" *Id*. at 10 (quoting *Strickland*, 466 U.S. at 690). Thus, the state court discounted Ms. Hill's affidavit because "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . ." Ex. TT at 9 (attach. 4, 87) (quoting *Strickland*, 466 U.S. at 689). Therefore, the court started with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [that] the challenged action might be considered a sound trial strategy." *Id*.

With this presumption in mind, the court considered and rejected every contention that Ms. Hill advanced that trial counsel were deficient. In particular, it noted that her assertions came

"after years of reflection and trial experience," *id*. at 10 (attach. 4, 88), post hoc reflections that the Supreme Court cautions against. *See Strickland*, 466 U.S. at 689 ("Even the best criminal defense attorneys would not defend a particular client in the same way."); *see also Harrington*, 562 U.S. at 107 ("[C]ounsel [are] entitled to formulate a strategy that was *reasonable at the time* and to balance limited resources in accord with effective trial tactics and strategies." (emphasis added)). Moreover, to further illustrate why counsel's performance must not be analyzed with the benefit of hindsight, the state court noted that Mr. Horne's "opinion of the case, even now, is much different than Ms. Hill's assessment." Ex. TT at 10 (attach. 4, 88).

After considering both affidavits, conducting an evidentiary hearing, and reviewing the record, the state court characterized this case as one of zealous representation by defense counsel, as demonstrated by their calling of nine witnesses, including experts. *Id*. The state court concluded that "Petitioner Quintana ha[d] not met his burden of showing that his counsel's representation fell below an objective standard of reasonableness." *Id*.

The AEDPA requires that a federal habeas court grant deference to a state court's reasoned decision unless it was contrary to Supreme Court precedent or it involved an unreasonable determination based upon the facts presented. Neither occurred here. The state court reasonably concluded that trial counsel put on a full and adequate defense and that their representation of Petitioner did not fall below an objective standard of reasonableness. Therefore, the state court reasonably applied *Strickland*, as it is deemed to have done if there is "*any* reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105 (emphasis added). For these additional reasons, the Court recommends Grounds One and Two be denied.

### B. Ground Three: Knives in Victim's Car

Petitioner's claim regarding the knives in Marisela's vehicle is not entirely clear. In its

entirety, the Petition asserted: "The 3 knives Found in victoms [sic] vehicle that matched the stabb [sic] wounds were never taken into custody and given back to victoms [sic] Family [sic] who dispposed [sic] of them." Pet. 13. As support, Petitioner pointed to:

> (1) Affidavit of Trial Attorney (2) order granting the me [sic] plaintiff a new trial Based on Ineffective assistance. (3) knives Found in victoms [sic] car matching the attack wonds [sic] given back to victom's [sic] Family then disspossed [sic] oF (4) wittness [sic] never put on stand and were available For questioning now some have passed away in the last 13 yrs [sic] (5) NO physical Evidence placing plaintiff at the scen., [sic] No DNA, no Forenecis [sic] matching plaintiff – and last the victoms [sic] Testimony – she had 3 different stories at 3 different interviews makeing [sic] Her Testimony noT Reliable – she lied to convict plaintiff.

*Id.*

The state district court addressed this claim on initial habeas review. Ex. QQ at 3-4 (attach. 4, 55-6). The court summarily denied the claim on the grounds that Petitioner "ma[de] only vague allegations without any support to the record of the case or to evidence outside the record. Moreover Petitioner failed to cite to any constitutional violation that might have occurred[.]" *Id.* This decision constitutes an adjudication on the merits under the AEDPA and is entitled to deference. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) ("Section 2254(d) applies even where there has been a summary denial.").

Petitioner fails to overcome this deference for the following reasons. First—as the state court correctly held—the claim does not state a federal constitutional violation. Thus, it is not cognizable in federal habeas corpus. *See* 28 U.S.C. § 2254 (a "district court shall entertain an application for a writ of habeas corpus . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

To the extent the Court construes this claim as a challenge to the sufficiency of the evidence, however, Petitioner would still not be entitled to relief. A sufficiency challenge requires this Court to ask "whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir. 2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The NMSC already answered this question on direct appeal. Ex. I at 20 (attach. 1, 129) ("After reviewing Defendant's limited argument on this point, we are satisfied that the evidence, as summarized herein, was more than sufficient to support each of the convictions."). Additionally, as set forth below, the facts to which Petitioner points in support of this claim fall far short of the quantum necessary for a federal court to grant habeas relief.

Beginning with supporting fact one, Ms. Hill's affidavit is silent on any knife, let alone the three that were allegedly discovered at the crime scene. This Court disregards supporting fact number two, as the erroneous grant of a new trial later reversed by the NMSC proves exactly nothing about any knives. *See supra,* n.5; n.10. Supporting fact three just restates Petitioner's ground for relief and thus provides no additional support. While supporting fact four may be true—witnesses can and do occasionally become unavailable—this fact does not speak to the sufficiency of the evidence presented at trial. Nor does it specify a particular witness, whether her or she would have testified, or what they might have said. Supporting fact five—the lack of DNA or forensic evidence—was a fact introduced at trial and argued by the defense. *See* Ex. MM (attach. 4, 17-20). The sixth and final supporting fact—criticisms of Marisela's trial testimony and alleged shifting versions of events—again says nothing about a knife.

None of these supporting facts, taken alone or in combination, or the assertions made in Petitioner's claim entitles Petitioner to relief. The Supreme Court of New Mexico's summary of the facts, which this Court presumes correct, adequately establishes that there is sufficient evidence

to support Petitioner's convictions.[12] Most notably, Petitioner "stabbed [Marisela] in the leg, arms, back, breast and face" and was "observed [by Marisela] in the driveway with his hand raised above [decedent]." *Quintana*, No. 30,847, 2009 WL 6608347, at *1-2. Petitioner maintains that Marisela fabricated her testimony to convict him. Pet. 13. In doing so, Petitioner ignores that his own brother, Librado Herrera, informed "investigators that [Petitioner] had contacted him, admitting that he had stabbed Marisela and Elisa, and requested money to go to San Diego." *Quintana*, No. 30,847, 2009 WL 6608347, at *1-2. The Court further notes that Carlos Heredia, another brother, informed police of Petitioner's location after the attack. *Id*. Regardless, witness credibility lies exclusively with the jury, and as such, an argument challenging the sufficiency of the evidence must fail. *See United States v. Castrorena-Jaime*, 285 F.3d 916, 933 (10th Cir. 2002) ("In reviewing the evidence, we do not weigh conflicting evidence or consider witness credibility, as that duty is delegated exclusively to the jury." (citing *United States v. Sanders*, 240 F.3d 1279, 1281 (10th Cir. 2001))). It is clear from the NMSC's summary of facts that Marisela's eyewitness testimony, along with the significant circumstantial evidence, more than adequately supported a finding that a rational trier of fact could have found the essential elements of each crime of conviction beyond a reasonable doubt. Therefore, the Court recommends relief based on the disposition of the knives be denied.

## VI.    CONCLUSION

For the reasons detailed above, it is **HEREBY RECOMMENDED** that Petitioner's "Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" [ECF No. 1] **BE DENIED**.

---

[12] 28 U.S.C. § 2254(e)(1) requires a court to presume a state court's factual findings are correct absent a showing supported by clear and convincing evidence. By not introducing any evidence to challenge the Supreme Court of New Mexico's factual findings, Petitioner failed to carry his burden to overcome this presumption. Thus, this Court will presume the factual findings are correct.

**IT IS SO RECOMMENDED**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**